UNITED STATES

v.

**Staff Sergeant David Michael CAVAN,
FR268–66–1991, United States Air
Force.**

**ACM 32546.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 17 Oct. 1996.

Decided 19 March 1998.

Appellate Counsel for Appellant: Colonel Douglas H. Kohrt, Lieutenant Colonel Kim L. Sheffield, and Major Ray T. Blank, Jr.

Appellate Counsel for United States: Colonel Brenda J. Hollis, Lieutenant Colonel Michael J. Breslin, and Captain Tony R. Roberts.

Before PEARSON, Senior Judge, MORGAN and SPISAK, Appellate Military Judges.

## OPINION OF THE COURT

MORGAN, Judge:

Appellant was convicted, consistent with his pleas, of using marijuana and false swearing in violation of Articles 112a and 134, UCMJ, 10 U.S.C. §§ 912a and 934 (1994).

Contrary to his pleas, the military judge found him guilty of possession of marijuana and introduction of marijuana onto a military installation. Article 112a, UCMJ, 10 U.S.C § 912a. The military judge sentenced him to a bad-conduct discharge, one year confinement, and reduction to E–1. A pretrial plea agreement limiting appellant's confinement to one year did not factor. Appellant raises five assignments of error. Because we find merit to appellant's assertion that his case must be returned for new post-trial processing, we will not address the other assignments of error at this time.

Appellant, a 35–year–old financial services specialist, was driving from Holloman Air Force Base (AFB), New Mexico, to El Paso, Texas, when he was waved down by a man named Ray, whose pickup truck had broken down. During the trip to El Paso, Ray informed appellant that he had a large amount of marijuana in the truck. Appellant agreed to help Ray by returning to the truck and assisting him in removing the marijuana from the truck. Appellant provided Ray with his mobility bag to carry the drugs, drove Ray to appellant's house on Holloman AFB, New Mexico, and eventually took Ray to a downtown motel and helped him unload the marijuana.

Appellant then smoked some of the marijuana with Ray, using pipes which appellant had brought from home. Appellant then returned to his home on Holloman AFB with a bag containing 53 grams of marijuana Ray had given him. The next day, appellant turned himself in to the security police and told them about his escapade. However, in his later sworn statement to the Air Force Office of Special Investigations (AFOSI), appellant initially said Ray had provided the pipes. This statement was the basis for the false swearing charge.

Following his conviction, appellant complained to his trial defense counsel about the handling of the case. Appellant told his defense counsel that he felt counsel was only interested in obtaining a pretrial agreement (PTA), and once that was approved, he felt counsel didn't really care about the results of the trial. Appellant was also upset that his defense counsel never brought up the de-

fense of duress during the trial. Although he did not mention it in his statement to the AFOSI, appellant later told his counsel that he was afraid to abandon Ray once he learned there was a lot of marijuana in the truck. He expressed fear that Ray might have a gun and harm him or even kill him if appellant tried to stop helping him once appellant knew about the marijuana. He now claims that his counsel provided him ineffective assistance at trial by failing to raise the defense of duress.

In his affidavits, defense counsel states that he had discussed duress with appellant on several occasions and appellant agreed not to raise that defense at trial. In fact, defense counsel states that appellant brought up his fear of being killed when drafting his unsworn statement. Defense counsel says that he discussed the defense of duress and informed appellant that his statement raised that issue. He says he told appellant that duress should be raised at trial on the merits if they were going to present it. According to defense counsel, appellant rejected the defense of duress and took the reference to it out of his unsworn statement. Defense counsel points out that the defense of duress would not appear relevant to the two offenses appellant agreed to plead guilty to as part of his PTA, and were only potentially relevant to the two offenses which appellant contested at trial.

Defense counsel was aware that appellant was unhappy with his trial representation from post-trial discussions with appellant and from the personal letter appellant prepared for inclusion in his clemency matters. Defense counsel stated "When I asked the appellant if he really felt I didn't care once his pretrial agreement was approved, he responded yes and I did not discuss the issue of the PTA any further. I felt at that time he was merely venting his frustration. I did not go into his right to counsel again at that time."

█ Although defense counsel was aware of appellant's expressed dissatisfaction with his trial representation, he did nothing to resolve this possible conflict with his continued post-trial representation. He did tell appellant that he could include anything he

wanted in appellant's personal letter to the convening authority. It appears he failed to explain to appellant the possible option of seeking a new conflict-free counsel to represent him during the post-trial phase. Defense counsel had an obligation to resolve this matter with appellant. He needed to determine if his client wanted to discharge him from the case or was merely making the allegation out of frustration. *United States v. Cornelious*, 41 M.J. 397, 398 (1995)(citing AIR FORCE RULES OF PROFESSIONAL RESPONSIBILITY Rule 1.16).

Defense counsel was not free to conclude on his own that appellant was "merely venting his frustration." Since defense counsel knew of his client's dissatisfaction prior to responding to the staff judge advocate's recommendation (SJAR) and submitting clemency matters to the convening authority, we cannot conclude that counsel was "mentally free of competing interests," or that there was no prejudice or need for a substitute counsel. *United States v. Carter*, 40 M.J. 102, 105–106 (C.M.A.1994).

The staff judge advocate (SJA) also had an obligation to address the matter before submitting his SJAR, along with the matters submitted by the defense, to the convening authority. The SJA was clearly on notice of appellant's complaint against his defense counsel from appellant's clemency letter. When an SJA becomes aware of a potential conflict of interest on the part of defense counsel, the SJA should notify defense counsel of his client's apparent dissatis-faction so that the issue of continued representation can be resolved. *Cornelious*, 41 M.J. at 398; *Carter*, 40 M.J. at 105. The SJA erred in not advising defense counsel of the apparent dissatisfaction of his client, and in proceeding with the post-trial process before this issue was properly resolved.

We set aside the convening authority's action, return the case to the convening authority, and direct that a new SJAR and action be prepared in appellant's case. We further order that appellant be provided a new, conflict-free defense counsel to represent him in responding to the new SJAR and in submitting clemency matters to the convening authority. Because of the convening authority's broad powers, we defer ruling on appellant's other assignments of error. We do note that appellant's challenge to the *ex post facto* application of Articles 57(a) and 58b, UCMJ, appears to be meritorious and entitles him to relief, unless the new post-trial processing of the case negates that issue. *United States v. Gorski*, 47 M.J. 370 (1997).

Senior Judge PEARSON and Judge SPISAK concur.